HUDSON VALLEY RAILWAY COMPANY, Respondent, *v.* THOMAS
O'CONNOR and Others, Appellants.

*Injunction, when not granted* pendente lite — *bonds, covered by a syndicate agreement, pledged, with the consent of the syndicate, to secure a note made by a construction company, and guaranteed by the obligor, a railway company — interest paid on the note does not justify, as against the syndicate seeking to pay for the bonds, the detaching of the corresponding coupons from the bonds — nature of interest coupons.*

A railway company entered into a contract with the Crescent Construction Company for the extension of its railway system, and in order to provide funds therefor issued from its treasury $500,000 in bonds secured by a mortgage upon its property. An underwriting syndicate was then formed, by which the underwriters agreed, if called upon, to purchase the bonds on or before February 1, 1903, at eighty per cent of their par value. A stock bonus was given with each bond and the underwriters further agreed that all the stock and bonds should be used as collateral security for a loan to be obtained by the construction company. The subscription contract provided that each subscriber might withdraw his proportion of the bonds and stock from the pledge by paying the contract price and applying it upon the loan.

August 18, 1902, the construction company made and delivered to a trust company its note for $400,000 bearing five per cent interest and deposited, as collateral security, the $500,000 of bonds and the stock to be given as a bonus, and also the underwriting agreement. The railway company guaranteed payment of the note. The construction company paid the interest on the note to July 1, 1903, but no part of the principal.

In August, 1903, pursuant to a call upon them, the underwriters paid the amount of their subscriptions, claiming that they paid the money by reason of their guaranty of their respective portions of the note rather than upon their agreement to purchase the bonds, and received their respective quotas of stock and bonds.

The trust company had, without the knowledge of the underwriters, detached, but had not canceled, the coupons upon the bonds for the interest due January 1 and July 1, 1903. Subsequently, upon the demand of the underwriters, it delivered such coupons to them.

The underwriting agreement, which was executed in August, 1902, did not contain any provision that the price of the bonds should be eighty per cent of their par value and accrued interest, nor did it provide that the bonds should not be deemed to be issued until the time when the subscribers were called upon to pay therefor or that payment of the interest upon the loan should be deemed payment of the interest on the bonds deposited.

In an action brought by the railway company to enjoin the underwriters from selling the detached coupons and to procure such coupons to be surrendered for cancellation, it was

*Held*, that the plaintiff was not entitled to an injunction *pendente lite* as it did not appear that there was any reasonable doubt but that the underwriters were entitled to the coupons in question;

That, in the absence of any agreement upon the subject, payment of interest upon the note did not operate as payment of interest upon the bonds.

An injunction *pendente lite* cannot issue in a case governed by section 603 of the Code of Civil Procedure unless it appears from the complaint that the plaintiff is entitled to the relief demanded.

Coupons attached to a bond are part thereof and are affected by its infirmities as well as endowed with its strength, and their character is not changed by detaching them from the bond without the authority of a purchaser thereof,

Interest which has accrued upon an interest-bearing obligation passes under a transfer of the main obligation unless expressly reserved.

APPEAL by the defendants, Thomas O'Connor and others, from an order of the Supreme Court, made at the Fulton Special Term and entered in the office of the clerk of the county of Warren on the 26th day of December, 1903, continuing during the pendency of the action an injunction order theretofore granted herein.

*Thomas O'Connor*, for the appellants.

*W. L. Kiley*, for the respondent.

HOUGHTON, J.:

The plaintiff desired to build an addition to its railway system, and entered into a contract with the Crescent Construction Company therefor. To provide funds the plaintiff issued from its treasury $500,000 in bonds, secured by a mortgage upon its property, and an underwriting syndicate was formed, to which the defendants were subscribers, by which the underwriters agreed to purchase said bonds at eighty per cent of their par value. A bonus of stock was given with each bond, which, however, is immaterial to the dispute in question. The underwriters agreed that the whole amount of stock and bonds should be used as collateral security for a loan to be obtained by the construction company. The contract provided that each subscriber might withdraw his proportion of the bonds and stock from such pledge upon paying and applying upon the loan his contract price. On the 18th of August, 1902, the construction company made and delivered its note to the Knickerbocker Trust Company for $400,000 at five per cent interest,

depositing as collateral security therefor the $500,000 of bonds and the stock to be given as bonus and also the underwriting agreement. Payment of the note was guaranteed by the plaintiff. The construction company paid the interest on this note to July 1, 1903, but no part of the principal.

The underwriting agreement provided that each subscriber should take and pay for, at the price of eighty per cent of the par value of said bonds, such number as he had subscribed for on or before February 1, 1903, if called upon by the syndicate manager therefor. This call upon the defendants was not made until the 1st of August, 1903.

Later in that month the defendants paid to the Knickerbocker Trust Company the amount of their subscriptions and demanded their respective quotas of bonds and stock, which were delivered to them, claiming at the time that they paid the moneys by reason of the guaranty of their respective portions of the note rather than upon their agreement to purchase. The trust company, without the knowledge of the defendants and without their acquiescence, had detached, but not canceled, the coupons upon said bonds for the semi-annual interest due January 1 and July 1, 1903. The defendants demanded these coupons as part of the bonds which they had purchased, or part of the security to which they were subrogated by payment, and they were delivered in pursuance of such demand. The defendants subsequently advertised these coupons for sale at public auction, whereupon this action was brought asking that said sale be restrained and that said coupons be surrendered to the plaintiff for cancellation. A preliminary injunction was obtained, and from the order continuing it during the pendency of the action this appeal is taken.

The theory upon which the plaintiff claims that the coupons are not subsisting obligations against it, and that they should, therefore, be canceled, is that the construction company having paid the interest on the $400,000 note to July 1, 1903, the coupons must be considered as having been paid; or that the bonds, being treasury bonds, should not be deemed to be issued until they were taken and paid for by the several underwriters, and hence did not bear interest until they passed to the hands of the purchaser.

If the record disclosed any reasonable probability that this was

so, or cast any reasonable doubt upon the ownership of the coupons by the defendants, we should feel constrained to uphold the preliminary injunction as within the discretion of the Special Term; but we find no such doubt in the record before us.

If the underwriting subscribers were guarantors of the note to the extent of their subscriptions, then, manifestly, upon paying the amounts which they had severally agreed thereon, they were entitled by subrogation to their proportion of the collateral security given for its payment, and this included the bonds and all coupons belonging to them.

We think this is also true if they be considered as purchasers under their underwriting agreement. The respondent's brief is emphatic in urging that the underwriters became purchasers in August, 1902, when their agreement was executed, and we concur in that view. The agreement, after reciting the reasons therefor, among which was the desire of the plaintiff to provide funds to meet its contract obligations with the construction company, states that each subscriber agrees to purchase the number of bonds set opposite his signature, at eighty per cent of par value, and pay for the same in cash; and that the plaintiff has sold and agrees to deliver upon demand said bonds at said price. Then follows the provision whereby the subscribers agree that the bonds and stock may be pledged to secure a loan to the amount of $400,000, with the right of sale of the collateral and redemption of proportional parts upon each subscriber paying the amount of his subscription. Nothing is contained in the agreement that the price of the bonds shall be eighty per cent of their par value *and accrued interest.* Nor is anything contained therein that the bonds shall not be deemed to be issued at the time of their deposit as collateral for said loan, or until the time each subscriber shall be called upon or shall pay for them. Nor is there any provision that payment of interest on the loan shall be deemed payment of interest on the bonds deposited. If the plaintiff desired to have it understood that payment of interest on the loan was to be deemed payment of interest on the bonds, or that the bonds should not be deemed to be issued and bear interest until actually taken up by the underwriting subscribers, those provisions should have been incorporated in the agreement. The underwriters were not parties to the agreement

between the plaintiff and the construction company. For the purpose of making certain that funds would be provided to pay the construction company for its work, the underwriters agreed to purchase the bonds at a certain price, and also agreed that they might be pledged as collateral security to the extent of the $400,000 which the construction company might borrow. In addition, they pledged themselves that if the construction company should not pay the interest on this amount, then the bonds and stock should be held therefor as well as the principal. Payment of interest on the note, in the absence of any agreement, was not payment of any interest on the bonds.

It is not claimed that the coupons have been actually paid, but rather that they ought not to be paid. Whether they ought or not depends upon the agreement. Coupons are part of a bond, and are affected by its infirmities as well as endowed with its strength, and their character is not changed by detaching them from the bond. (*McClelland* v. *Norfolk Southern R. R. Co.*, 110 N. Y. 469; *Kelly* v. *Forty-second Street R. Co.*, 37 App. Div. 500.) Detaching the coupons from the bonds did not change their character, if done without authority from the purchasers, and they were still good as against the railroad company. (*Union Trust Co.* v. *Monticello & P. J. R. Co.*, 63 N. Y. 311.) Accrued interest goes with an interest-bearing obligation. It passes as an incident to the main obligation, unless expressly reserved. Irrespective of their negotiable character, coupons are mere evidence of accruing interest.

Time was not the essence of the underwriting contract. If that contract be deemed an executory one, still, when the underwriters paid the contract price, they were entitled to the delivery of the property contracted to be sold. Payment was only the final act necessary to make the contract complete. The bonds with their coupons attached had been delivered by the plaintiff to the trust company, and it could not prevent the delivery of them when the subscribers paid the stipulated price.

The complaint demands judgment restraining the threatened sale of the coupons, and the injunction must have been granted under the provisions of section 603 of the Code of Civil Procedure. That section provides that it must appear by the complaint that the plaintiff is entitled to the relief demanded, and unless that does appear

an injunction *pendente lite* cannot issue. (*Heine* v. *Rohner*, 29 App. Div. 239.)

The complaint does not state that it was agreed between the plaintiff and the underwriters that the bonds should not be deemed issued until taken up by the subscribers under the terms of their agreement, or that the bonds were not to bear interest until paid for, or that payment of interest on the note should be deemed payment of interest on the bonds. Without some one of these allegations no cause of action is stated against these defendants. If the affidavits may be resorted to, and if the written agreement of the underwriters is not controlling and parol evidence may be given, still the supporting affidavits do not help the situation, for they are silent on these vital points.

In any aspect of the case we see no escape from the conclusion that the plaintiff is not entitled to an injunction even during the pendency of the action. The order should be reversed and injunction dissolved, with ten dollars costs and disbursements.

All concurred.

Order reversed, with ten dollars costs and disbursements.