[952 NE2d 482, 928 NYS2d 666]

NML CAPITAL, Respondent-Appellant, and MONTREUX PARTNERS et al., Respondents, v REPUBLIC OF ARGENTINA, Appellant-Respondent.

Argued June 1, 2011; decided June 30, 2011

**POINTS OF COUNSEL**

*Cleary Gottlieb Steen & Hamilton LLP*, New York City (*Carmine D. Boccuzzi, Jonathan I. Blackman* and *Christopher P. Moore* of counsel), for appellant-respondent. Post-maturity or post-acceleration, plaintiffs are entitled to prejudgment interest on principal at the contract rate, not interest at the statutory rate in addition to the contract rate. (*Pryor v City of Buffalo*, 197 NY 123; *Jamaica Sav. Bank v Giacomantonio*, 59 Misc 2d 704; *Taylor v Wing*, 84 NY 471; *Astoria Fed. Sav. & Loan Assn. v Rambalakos*, 49 AD2d 715; *Stull v Feld*, 34 AD2d 655; *Schwall v Bergstol*, 97 AD2d 540; *Valloni v Crisona*, 170 AD2d 596; *Citibank, N. A. v Liebowitz*, 110 AD2d 615; *European Am. Bank v Peddlers Pond Holding Corp.*, 185 AD2d 805; *City Real Estate Co. v MacFarland*, 67 Misc 286.)

*Dechert LLP*, New York City (*Robert A. Cohen* and *Dennis H. Hranitzky* of counsel), for respondent-appellant. I. The Republic of Argentina was contractually required to make semiannual payments of contract interest on the unpaid principal of NML Capital's (NML) accelerated floating rate accrual notes (FRANs) until the date of NML's judgment. (*Clients' Sec. Fund of State of N.Y. v Grandeau*, 129 AD2d 383, 72 NY2d 62; *Matter of Hickey*, 7 AD2d 932; *Matter of People v Applied Card Sys., Inc.*, 11 NY3d 105; *Judd v O'Brien & Waddle*, 21 NY 186; *Connors v Hartford Fire Ins. Co.*, 138 AD2d 877; *Matter of Podiatry Socy. of State of N.Y. v Regents of Univ. of State of N.Y.*, 78 Misc 2d 731; *A.J. Temple Marble & Tile v Union Carbide Marble Care*, 87 NY2d 574; *91 E. B'way Corp. v Pippo Toy Co., Inc.*, 185 Misc 779; *Capital Ventures Intl. v Republic of Argentina*, 552 F3d 289; *Empire Trust Co. v Equitable Off. Bldg. Corp.*, 167 F2d 346.) II. Under *Spodek v Park Prop. Dev. Assoc.* (96 NY2d 577 [2001])

the Republic of Argentina must pay statutory interest on all overdue amounts of contract interest, including semiannually due amounts of contract interest that became payable after maturity. (*NYCTL 1998-2 Trust v Wagner*, 61 AD3d 728; *Bank of Am., N.A. v Solow*, 19 Misc 3d 1123[A], 2008 NY Slip Op 50830[U], 59 AD3d 304.) III. This Court should not follow *Capital Ventures Intl. v Republic of Argentina* (552 F3d 289 [2d Cir 2009]). (*Valloni v Crisona*, 170 AD2d 596; *Matter of Khatibi v Weill*, 8 AD3d 485; *Long v State of New York*, 7 NY3d 269; *Aardwoolf Corp. v Nelson Capital Corp.*, 861 F2d 46; *Citibank, N. A. v Liebowitz*, 110 AD2d 615; *Bostwick-Westbury Corp. v Commercial Trading Co.*, 94 Misc 2d 401; *Gizzi v Hall*, 309 AD2d 1140; *Berman v Schwartz*, 59 Misc 2d 184, 33 AD2d 673; *Franklin Natl. Bank of Long Is. v Capobianco*, 51 Misc 2d 30; *Northwestern Mut. Life Ins. Co. v Uniondale Realty Assoc.*, 11 Misc 3d 980.) IV. Other provisions in the bond documents support NML Capital's reading.

*Paul, Weiss, Rifkind, Wharton & Garrison LLP*, New York City (*Walter Rieman* of counsel), and *Goodwin Proctor LLP*, Boston, Massachusetts (*Stephen D. Poss* and *Robert D. Carroll* of counsel), for respondents. I. Because the Republic of Argentina has never paid the principal amounts due at maturity, Argentina was contractually required to continue making payments of contract interest every six months until the dates of the judgments. (*Paramount Communications v Horsehead Indus.*, 231 AD2d 40; *Matter of Budd v Valentine*, 283 NY 508; *Abiele Contr. v New York City School Constr. Auth.*, 91 NY2d 1; *Uribe v Merchants Bank of N.Y.*, 91 NY2d 336; *Ace Wire & Cable Co. v Aetna Cas. & Sur. Co.*, 60 NY2d 390; *Matter of Union Indem. Ins. Co. of N.Y.*, 92 NY2d 107; *Empire Trust Co. v Equitable Off. Bldg. Corp.*, 167 F2d 346; *O'Brien v Young*, 95 NY 428; *European Am. Bank v Peddlers Pond Holding Corp.*, 185 AD2d 805; *Valloni v Crisona*, 170 AD2d 596.) II. Under *Spodek v Park Prop. Dev. Assoc.* (96 NY2d 577 [2001]), the Republic of Argentina must pay statutory interest on all overdue amounts of contract interest, including semiannually due amounts of contract interest that became payable after maturity. (*Empire Trust Co. v Equitable Off. Bldg. Corp.*, 167 F2d 346; *Prager v New Jersey Fid. & Plate Glass Ins. Co. of Newark, N.J.*, 245 NY 1; *Love v State of New York*, 78 NY2d 540.) III. NML Capital should not be penalized for exercising its contractual right to accelerate. (*Aardwoolf Corp. v Nelson Capital Corp.*, 861 F2d 46; *Atlas Fin. Corp. v Ezrine*, 42 AD2d 256; *Bostwick-Westbury*

*Corp. v Commercial Trading Co.*, 94 Misc 2d 401; *Matter of LHD Realty Corp.*, 726 F2d 327.) IV. Other provisions in the bond documents support the floating rate accrual notes' (FRANs) holders' reading. (*Gizzi v Hall*, 309 AD2d 1140.) V. The Republic of Argentina misinterprets the applicable law and the underlying documents and events. (*O'Brien v Young*, 95 NY 428; *Spodek v Park Prop. Dev. Assoc.*, 96 NY2d 577; *Rachlin & Co. v Tra-Mar, Inc.*, 33 AD2d 370; *EM Ltd. v Republic of Argentina*, 720 F Supp 2d 273; *Allied Bank Intl. v Banco Credito Agricola de Cartago*, 757 F2d 516; *Pravin Banker Assoc., Ltd. v Banco Popular del Peru*, 895 F Supp 660, 109 F3d 850; *National Union Fire Ins. Co. of Pittsburgh, Pa. v People's Republic of the Congo*, 729 F Supp 936; *A.I. Credit Corp. v Government of Jamaica*, 666 F Supp 629; *Travelers Ins. Co. v Brass Goods Mfg. Co.*, 239 NY 273; *Sprint Communications Co. v APCC Services, Inc.*, 554 US 269.)

## OPINION OF THE COURT

GRAFFEO, J.

In this case the United States Court of Appeals for the Second Circuit has certified questions that require us to interpret the terms of bonds issued by the nation of Argentina. We are asked to determine whether Argentina's obligation to make biannual interest-only payments to bondholders continued after maturity or acceleration of the indebtedness and, if so, whether the bondholders were entitled to CPLR 5001 prejudgment interest on payments that were not made as a consequence of the nation's default.

In 1998, Argentina issued a series of floating rate accrual notes (FRANs) that were scheduled to mature in April 2005 when the principal was due to be repaid in full to bondholders. The FRANs were governed by a series of bond documents (a Fiscal Agency Agreement, Prospectus, Prospectus Supplement and Floating Rate Accrual Notes Certificate) directing that they were to be interpreted according to New York law. As the issuer, Argentina assumed the obligation to pay the bondholders interest-only payments twice a year, on April 10 and October 10, "until the principal hereof is paid or made available for payment," at a floating interest rate calculated and published by a determination agent pursuant to a complex formula. The formula was structured in such a manner that, for each six-month period, the interest rate would rise or fall depending on Argentina's financial health as measured by certain market

indicators.[1] Acceleration clauses were also included in the bond documents, permitting bondholders to accelerate the due date of the principal in the event of a default by the issuer.

From the date it issued the bonds until October 2001, Argentina fulfilled its obligations under the FRANs by making the interest-only payments twice a year as required. Given Argentina's relatively stable economy during that period, the floating interest rate (published by Morgan Stanley, the determination agent retained by Argentina) related to the biannual payments fluctuated between 9% and 14.4% per annum. However, after a severe financial crisis in late 2001, Argentina announced that it would no longer service its approximately $80 billion in external debt, including the FRANs at issue in this case. As a consequence of that pronouncement, the floating interest rate rose meteorically, reaching approximately 101% per annum (50.526% per biannual period) in April 2005, the last date such a calculation was made by Morgan Stanley, whose contract expired at that time. Since December 2001, Argentina has not made any of the biannual interest payments nor has it repaid any of the principal owed to the bondholders that brought this litigation. Argentina's failure to make interest-only payments and its 2001 declaration of a moratorium on servicing foreign debt were both "events of default" under the terms of the bond documents.

Plaintiffs are companies that acquired the FRANs at different points in time, some before Argentina's financial collapse and some after. In total, plaintiffs acquired FRANs representing approximately $290 million in unpaid principal, with the lead plaintiff in this litigation—NML Capital—holding bonds valued at $102 million. In February 2005, NML Capital accelerated about $32 million of that debt. The principal relating to the remaining FRANs became due on the April 2005 maturity date.

Plaintiffs commenced numerous separate actions against Argentina in the United States District Court, Southern District of New York, seeking damages for the nation's default on the bonds, and the claims were subsequently consolidated. Argentina did not dispute that it breached its obligations under the FRANs and was required to repay the principal indebtedness. But after plaintiffs were granted summary judgment on liability,

---

1. If the nation's financial condition was poor and the market perceived the FRANs as a high-risk debt, the interest rate would rise. Conversely, if Argentina's prospects improved and the FRANs were viewed as a lower-risk debt, the interest rate would decline.

a controversy arose concerning the appropriate calculation of damages.

In particular, Argentina raised several arguments affecting plaintiffs' entitlement to prejudgment interest. First, the nation maintained that it should not be required to pay prejudgment interest at the contract rate—the floating interest rate calculated biannually based on the complex formula in the bond documents. Because the interest rate rose to extraordinary levels, Argentina asserted that the rate was unconscionable, usurious and amounted to a liquidated damages clause that imposed an unenforceable penalty. The District Court rejected these arguments, finding that the floating interest rate provision was enforceable (2009 WL 721736, 2009 US Dist LEXIS 21530). The Second Circuit affirmed this aspect of the District Court's analysis on the merits, without certifying any questions regarding those issues to this Court.

Argentina's second contention involved prejudgment interest on the biannual interest-only payments. The nation acknowledged that, in addition to prejudgment interest on unpaid principal, it was required to pay 9% statutory prejudgment interest pursuant to CPLR 5001 on the interest payments it failed to render between the date of its default and the date the FRANs matured or were accelerated. However, Argentina disputed that it had any obligation to continue biannual interest payments after the FRANs matured or were accelerated and further contended that 9% statutory interest should not be imposed on such payments because this constituted the impermissible collection of "interest on interest" under New York law.

Plaintiffs countered that Argentina had a duty under the plain language of the bond documents to continue the biannual interest payments post-maturity or post-acceleration of the debt until the principal was paid in full. Because the nation failed to make such payments (in fact, it ceased making interest payments in December 2001), plaintiffs maintained that they were entitled to collect the unpaid interest-only payments as damages, plus 9% statutory interest on those payments from the date they were due until the date of entry of a judgment.

The District Court partially credited each of the parties' arguments. Based on the language in the bond documents, the court agreed with the bondholders that Argentina was obligated to pay interest-only payments after the bonds matured until the

principal was paid and, therefore, the bondholders were entitled to 9% statutory interest on the unpaid post-maturity interest-only payments. But, with respect to the subset of bonds that were accelerated, the court sided with Argentina. Relying on *Capital Ventures Intl. v Republic of Argentina* (552 F3d 289 [2d Cir 2009], *cert denied* 558 US —, 130 S Ct 202 [2009]), the District Court held that the nation's liability for biannual interest payments ceased on the date of acceleration and, therefore, the 9% statutory interest was not owed post-acceleration (2009 WL 721736, 2009 US Dist LEXIS 21530).

Argentina and NML Capital cross-appealed to the Second Circuit. After affirming the District Court's determination that the floating interest rate provision in the bond documents was enforceable, the Second Circuit concluded that the remaining issues concerning the biannual interest payments and the calculation of prejudgment interest raised unresolved issues of New York law. Accordingly, the Second Circuit certified the following three questions for our review:

> "[1] Is a bond provision requiring the issuer of the bond to make, on dates certain, bi-annual interest payments on principal 'until the principal hereof is paid' properly construed as an obligation to pay interest for so long as the principal is outstanding, including after the date of maturity?

> "[2] Is a bond provision requiring the issuer of the bond to make, on dates certain, bi-annual interest payments on principal 'until the principal hereof is paid' properly construed as an obligation to pay interest for so long as the principal is outstanding, including after acceleration?

> "[3] If either of the foregoing questions is answered in the affirmative, does that obligation provide a valid basis for awarding statutory interest under N.Y. C.P.L.R. § 5001 (a) on post-maturity or post-acceleration interest payments that came due but were never paid?" (621 F3d 230, 244 [2010].)

We accepted the certification (15 NY3d 859 [2010]).

I.

Since this appeal primarily involves a dispute concerning the calculation of prejudgment interest, we begin with some general principles of New York law pertaining to that topic. Under CPLR

5001, interest on a sum awarded as a result of a breach of contract is computed from the earliest date that the claim accrued, "except that interest upon damages incurred thereafter shall be computed from the date incurred" (CPLR 5001 [a], [b]). Thus, CPLR 5001 permits a party that prevailed in a breach of contract action to obtain prejudgment interest (postjudgment interest is addressed in CPLR 5003). And where a contract provides for periodic payments or installments, the defaulting party is required to pay prejudgment interest on any missed payment from the date the payment became due (*see Spodek v Park Prop. Dev. Assoc.*, 96 NY2d 577 [2001]).

When a claim is predicated on a breach of contract, the applicable rate of prejudgment interest varies depending on the nature and terms of the contract. Most agreements associated with indebtedness provide a "contract rate" of interest that determines the value of the loan and that rate is used to calculate interest on principal prior to loan maturity or a default in performance. If the parties failed to include a provision in the contract addressing the interest rate that governs after principal is due or in the event of a breach, New York's statutory rate will be applied as the default rate (*see Isaias v Fischoff*, 39 AD2d 850 [1st Dept 1972], *affd* 33 NY2d 941 [1974]). CPLR 5004 sets forth a statutory rate of 9% per annum. For example, in *Chipetine v McEvoy* (238 AD2d 536, 537 [2d Dept 1997]), where a debtor "executed a promissory note for the principal sum of $1,000,000, with interest at 12% per annum, payable to the plaintiff," interest on the unpaid principal was calculated at the contract rate—12%—until the debtor defaulted on the note and, thereafter, was calculated at the statutory rate of 9%.

As an important corollary, New York courts have long held that when an agreement involving an indebtedness "provides that the interest shall be at a specified rate *until the principal shall be paid*, then the contract rate governs until payment of the principal, or until the contract is merged in a judgment" (*O'Brien v Young*, 95 NY 428, 430 [1884] [emphasis added]; *see e.g. Stull v Feld*, 34 AD2d 655 [2d Dept 1970]; *see generally NYCTL 1998-2 Trust v Wagner*, 61 AD3d 728 [2d Dept 2009]). Said another way, when the principal on a loan is due on a date certain and the debtor fails to make payment, the interest rate in the contract will be used to calculate interest on unpaid principal from the date of maturity of the loan to the entry of judgment (*see e.g. Astoria Fed. Sav. & Loan Assn. v Rambalakos*, 49 AD2d 715 [2d Dept 1975]). Thus, inclusion of a clause

directing that interest accrues at a particular rate "until the principal is paid" (or words to that effect)[2] alters the general rule that interest on principal is calculated pursuant to New York's statutory interest rate after the loan matures or the debtor defaults.

If the current dispute involved the proper rate to be applied when calculating interest on the principal loaned to Argentina, this well-established precedent would readily settle the issue. The bond documents required that Argentina pay interest at the complex floating rate "until the principal hereof is paid or made available for payment," triggering the requirement that interest on principal be assessed at the contract rate until the principal was repaid (which has not occurred) or the contract merged in the judgment. Indeed, it is undisputed that Argentina must pay interest on principal at the contract rate post-maturity and post-acceleration of the debt, which is a sum equivalent to the total of any unpaid biannual interest payments.[3] But the controversy here is not over the proper prejudgment interest rate to apply to *principal*; rather, the issue is whether the biannual interest payments continued to be due after maturity or acceleration of the debt and, if so, whether the bondholders are entitled to collect prejudgment interest on the *interest-only payments* that were due prior to judgment but were not made. We therefore turn to the questions framed by the Second Circuit.

## II.

■ To answer the first inquiry we must interpret the language in the bond documents to determine whether Argentina's duty to remit interest biannually on unpaid FRANs principal continued after the bonds matured in April 2005. As we have repeatedly stated, "when parties set down their agreement in a clear, complete document, their writing should be enforced according to its terms" (*Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470, 475 [2004] [ellipsis and citation omitted]). It is the role of the courts to enforce the

---

2. Parties can accomplish the same result without including the phrase "until the principal is paid" (*see e.g. Citibank, N. A. v Liebowitz*, 110 AD2d 615 [2d Dept 1985] [where mortgage granted creditor the right to demand payment of the entire amount owed, "with interest up to the day (the creditor) receive(s) payment" (*id.* at 616 [emphasis omitted]), this amounted to an agreement that the contract rate of interest would continue to apply after a default]).

3. As the District Court noted, on the bond maturity date, the biannual interest rate was 50.526%, the equivalent of an annual rate of 101.052%.

agreement made by the parties—not to add, excise or distort the meaning of the terms they chose to include, thereby creating a new contract under the guise of construction (*Reiss v Financial Performance Corp.*, 97 NY2d 195, 199 [2001]). Adherence to these principles is particularly appropriate in a case like this involving interpretation of documents drafted by sophisticated, counseled parties and involving the loan of substantial sums of money.

The FRANs certificate contains a repayment clause in which Argentina promised to pay Cede & Co. (an intermediary that was to pass funds on to the beneficial owners of the bonds) the principal owed on the bonds

> "on April 10, 2005 upon presentation and surrender of this Security, and to pay interest thereon . . . every six months in arrears on April 10 and October 10 in each year, commencing October 10, 1998 (each an 'Interest Payment Date'), at the rate set forth below, until the principal hereof is paid or made available for payment."

The "rate set forth below" refers to the floating interest rate formula applied biannually by the determination agent.

The parties agree that this provision required Argentina to make biannual interest-only payments from the commencement date until the date of maturity of the bonds. Argentina maintains, however, that its obligation to make these periodic payments ended when the debt matured. Based on the plain language of this provision, plaintiffs assert that the only event that would terminate the duty to remit interest payments would be repayment of principal, which did not occur.

Plaintiffs' interpretation best comports with the plain language of the contract. After identifying the date that the bonds would mature and that repayment of principal was required, the provision imposes an obligation to make interest payments every six months "in arrears" on specified dates, commencing on a date certain (October 10, 1998) and continuing at the contract's floating interest rate "until the principal hereof is paid or made available for payment." By its terms, the contract contemplates that the bondholders are entitled to biannual interest payments until the principal is actually repaid in full—and not merely until the bond maturity date as Argentina suggests.

Had Argentina—the drafter of the bond documents—intended that its responsibility to pay interest twice a year cease upon

maturity, it could easily have clarified that intent in any number of ways. It could have stated that payments would continue from October 10, 1998 to April 10, 2005 (the specific maturity date identified earlier in the clause). Similarly, it could have restructured the clause by first referencing the payment obligation and then stating that the obligation continued "until" the maturity date. Or it could have directed that interest payments were to be made until the principal was due, thereby referring back to the loan maturity date.

Instead, both the structure and language of the provision point to a contrary intent. The clause begins by referencing the duty to repay principal on April 10, 2005 and then proceeds to indicate—using the word "and"—that interest will be paid every six months "in arrears" until the principal is paid or made available for payment. This formulation suggests two potentially separate obligations on the part of the issuer. The first is to repay the principal on the maturity date and the second is to make biannual interest payments until repayment of the principal. Nothing in the language chosen by the drafters suggests that breach of the first obligation was intended to relieve the issuer of the duty to fulfill the second. To the contrary, given the structure and language chosen in the clause, the natural interpretation is that principal was due in April 2005 and that interest-only payments would continue to be due biannually until the principal was actually paid or made available for payment.

This interpretation is consistent with our well-established construction of comparable "until the principal is paid" language in controversies involving the calculation of prejudgment interest on principal. Absent such language, the contract rate ceases to be applicable when the loan matures or the debtor defaults and prejudgment interest on principal will be calculated at the statutory rate, currently 9%. But where the parties direct that interest on principal accrues at a particular rate "until the principal shall be paid," this extends the effectiveness of the contract's interest rate provision beyond the date of maturity so that it "governs until payment of the principal, or until the contract is merged in a judgment" (*O'Brien*, 95 NY at 430). By analogy, in this case where the bond not only directed that interest accrue at a particular rate but also imposed a duty to make biannual interest payments until the principal was paid, the use of this language signaled that this periodic payment obligation remained in effect after the loan matured, until the principal

was paid or the contract merged in a judgment. Because the FRANs certificate in this case required the issuer to continue to make biannual interest payments post-maturity while the principal remained unpaid, we answer the first certified question in the affirmative.

## III.

Next, in relation to the subset of FRANs debt that was subject to acceleration prior to the contract maturity date, we are asked whether Argentina was required, under the same repayment clause, to make biannual interest-only payments after acceleration. As both parties acknowledge, "acceleration" of a repayment obligation in a note or bond changes the date of maturity from some point in the future (in this case, April 2005) to an earlier date based on the debtor's default under the contract. In the context of a loan, this is the very definition of "acceleration" (*see* Black's Law Dictionary 12 [9th ed 2009] [defining acceleration as "(t)he advancing of a loan agreement's maturity date so that payment of the entire debt is due immediately"]). When NML Capital accelerated $32 million of the debt in February 2005, it altered the maturity date for that debt from April 2005 to February 2005. The question then becomes whether Argentina's obligation to make the interest payments twice a year "until the principal hereof is paid"—which we have already concluded extended beyond the maturity date of the loan—ceased because loan maturity was hastened by a default and acceleration.

The parties to a loan agreement are free to include provisions directing what will happen in the event of default or acceleration of the debt, supplying specific terms that supercede other provisions in the contract if those events occur. They may, for example, agree that if principal is not repaid on the maturity date, a default rate of interest will apply thereafter (*see e.g. European Am. Bank v Peddlers Pond Holding Corp.*, 185 AD2d 805 [2d Dept 1992] [using default interest rate provision in modification and extension agreement to calculate interest on principal from the date the loan matured until the date the contract merged in a judgment]). Or they may direct that a party pay a prepayment premium and specify that the premium obligation will be triggered if there is a default and acceleration of the indebtedness (*see e.g. Northwestern Mut. Life Ins. Co. v Uniondale Realty Assoc.*, 11 Misc 3d 980 [Sup Ct, Nassau County 2006] [based on the contract language, a payment

arising from foreclosure did not constitute prepayment and therefore did not trigger the duty to remit a prepayment premium]).

In this case, however, the FRANs certificate unqualifiedly states that the biannual interest payments are to be made until the principal is paid. And Argentina has not pointed to any language in the repayment or acceleration clauses—or any other provision of the bond documents—indicating that the parties intended this requirement to terminate upon acceleration of the debt, even if the principal was not repaid at that time.

Argentina points to the observation in *Capital Ventures Intl. v Republic of Argentina* (552 F3d at 296) that

> "[t]he normal consequence of acceleration is that interest payments that would have been due in the future are no longer due, because, after acceleration, the entire principal is immediately due and owing; in other words, future interest payments are 'unearned' because the creditor is no longer loaning the debtor the principal."

Interpreting Argentinian bonds similar to these, in *Capital Ventures* the court held that the bond issuer was not required to continue making interest payments after acceleration on the rationale that there was no specific language in the bond documents indicating that the parties intended to supplant the "normal" meaning of acceleration.

As we have indicated, in New York the consequences of acceleration of the debt depend on the language chosen by the parties in the pertinent loan agreement. While it is understood that acceleration advances the maturity date of the debt, we are unaware of any rule of New York law declaring that other terms of the contract not necessarily impacted by acceleration—such as an obligation to make biannual interest payments until the loan is repaid—automatically cease to be enforceable after acceleration.[4] And although it is true that "unearned" interest is generally not awarded as damages in New York (absent an

---

4. It bears noting that the contract in this case did not call for repayment of principal in periodic installments over time, with interest amortized over the life of the loan and added to each principal payment. In that situation, depending on the language chosen by the parties and the nature of the transaction, acceleration of the debt—i.e., a demand for lump sum payment of all outstanding principal—might be inconsistent with continuing enforcement of a periodic payment obligation that purported to remain in effect until the principal was repaid. Under that scenario, it could be argued that the

enforceable agreement to the contrary), the interest-only payments in this case do not involve "unearned" interest as that term has been used by New York courts. As pertinent here, unearned interest is interest that has not accrued, typically because it is attributable to a period after the loan has been repaid, when the creditor is no longer lending its money but has reacquired it either through repayment or a foreclosure sale (*see Atlas Fin. Corp. v Ezrine*, 42 AD2d 256 [1st Dept 1973]; *Berman v Schwartz*, 59 Misc 2d 184 [Sup Ct, NY County 1968], *affd on op below* 33 AD2d 673 [1st Dept 1969], *lv denied* 26 NY2d 612 [1970]; *Bostwick-Westbury Corp. v Commercial Trading Co.*, 94 Misc 2d 401 [NY City Civ Ct 1978]; *see generally Aardwoolf Corp. v Nelson Capital Corp.*, 861 F2d 46 [2d Cir 1988]).[5] In this case, principal has not been repaid and the biannual payments reflect interest that has already been earned (i.e., the interest in each unmade payment relates to a six-month interval between February 2005 and the judgment—a period when the loan remained outstanding).[6] As such, New York's "unearned interest" jurisprudence is inapplicable to this controversy.

---

installment payments were designed to effectuate the repayment of principal over time, something the accelerating creditor no longer sought. We note that, in this case, the principal was to be repaid in a lump sum—the periodic payments were not a vehicle for repayment of principal.

**5.** Unearned interest issues usually arise when repayment of the loan is to occur in installments of combined principal and interest over an extended time period and interest is precomputed at loan commencement based on the assumption that the loan will continue until full maturity. When that assumption is upset, and the loan is repaid early, such as through a foreclosure sale, the creditor is generally not entitled to recover the total amount of interest that it would have earned had the loan continued until the expected maturity date—unless the parties have agreed otherwise.

**6.** For this, and other reasons, Argentina's reliance on *Gizzi v Hall* (309 AD2d 1140 [3d Dept 2003]) is misplaced. *Gizzi* involved a mortgage note that was to be repaid in installments of principal and interest. The loan document did not include an "until the principal is paid" clause of any kind. When the debtor failed to make several installment payments, the creditor accelerated the debt and subsequently brought suit, arguing that damages should be calculated as "the sum of all future mortgage payments, including unpaid principal and all future interest amounts, plus statutory interest" (309 AD2d at 1141). Thus, the creditor sought "unearned interest"—interest that had not accrued—and then demanded statutory interest on top of the unearned contract interest. The court properly denied that relief. Given the absence of "until the principal is paid" language, no similar argument could have been made in *Gizzi* that the obligation to make interest payments continued after acceleration of the debt, thereby generating an obligation to pay interest on unpaid interest payments that accrued prior to judgment.

Having concluded that the obligation to make biannual interest payments continued after the bonds matured if principal was not promptly repaid, and that nothing in the bond documents indicates that the payments were to stop in the event of acceleration of the debt, it follows that Argentina's duty to make the payments continued after NML Capital accelerated $32 million of the debt in February 2005. We therefore answer the second certified question in the affirmative.

## IV.

■ Since we have determined that the biannual interest payments continued after the bonds matured either on the expected maturity date or through acceleration of the debt, we reach the last question posed by the Second Circuit: whether the bondholders were entitled to statutory prejudgment interest on the unmade payments from the date that they were due. Argentina acknowledged in the District Court that it was required to pay prejudgment interest at the statutory rate on the biannual payments it failed to make prior to the maturity or acceleration of the bonds. But it contended that it should not be charged with prejudgment interest on unpaid post-maturity or post-acceleration interest payments because the contract did not require it to make those payments (an argument we have rejected) and the imposition of such interest would constitute impermissible "interest on interest," providing a windfall to the bondholders. Plaintiffs counter that they are entitled to prejudgment interest at the statutory rate on any unpaid interest payments under this Court's holding in *Spodek* (96 NY2d 577), arguing that the imposition of "interest on interest" is neither inappropriate nor amounts to a double recovery.

Historically, there may have been some question as to whether the collection of "interest on interest" was disfavored in New York but New York public policy concerning the recovery of simple interest on overdue interest payments has become evident over time. In 1989, General Obligations Law § 5-527 was enacted, which clarified that agreements calling for "compound interest"—defined broadly as "the accruing of interest upon unpaid interest irrespective of whether such unpaid interest is added to the principal debt"—were enforceable if the principal debt involved more than $250,000 (*see* L 1989, ch 202, § 1). And, in our 2001 decision in *Spodek*, we held that a promissory note holder could collect prejudgment interest pursuant to CPLR 5001 on unpaid, overdue installment payments from

the date they were due, even where the payments were comprised of both principal and interest.

Based on our analysis in *Spodek*, we conclude that the bondholders are entitled to prejudgment interest under CPLR 5001 on the unpaid biannual interest payments that were due— but were not paid—after the loans were either accelerated or matured on the due date. To be sure, there are significant differences between this case and *Spodek*. These Argentinian bonds do not call for repayment through installments of principal and interest and, here, the prejudgment interest dispute involves post-maturity and post-acceleration interest payments (the *Spodek* note did not contain "until the principal is paid" language and the unpaid installments had become due prior to loan maturity). But, for purposes of determining whether the bondholders are entitled to prejudgment interest at the statutory rate on unpaid periodic interest payments, these distinctions are not material.

As we have previously explained, the function of prejudgment interest is to compensate the creditor for the loss of use of money the creditor was owed during a particular period of time (*see* 96 NY2d at 581; *Love v State of New York*, 78 NY2d 540, 545 [1991]). In this case, the biannual interest payments were designed to reimburse the bondholders for the loss of use of the principal during the relevant six-month time interval. The imposition of statutory interest on the unpaid interest payments compensates the bondholders for a different loss—the failure of the issuer to timely make the interest-only payments. If those interest payments had been made, the bondholders could have invested those funds, generating income. As a consequence of this default, plaintiffs are entitled to be compensated for the loss of the time value of that money—which can be accomplished only by awarding them statutory interest on the unpaid interest-only payments. Absent this component of damages, plaintiffs would be reimbursed only for their loss of use of the principal—and not for loss of use of the periodic interest payments, a separate injury.

We do not agree with Argentina that the imposition of prejudgment interest on the unpaid interest payments permits the bondholders to recover interest twice on the same principal. The bondholders are receiving interest relating to their retention of the principal only once (represented by the recovery of the interest-only payments). The application of statutory interest on unpaid interest payments compensates

them for a distinct injury—Argentina's failure to timely make interest payments.

Argentina emphasizes that fact that, in prior New York cases interpreting "until the principal is paid" language, interest has been applied to principal at the contract rate—a second level of statutory interest has not been recovered on the contract interest. But it overlooks the fact that the contracts in the other cases are distinguishable because the "until the principal is paid" terminology was not attached to an obligation to make periodic interest-only payments. In most, the pertinent language was included in a clause that did nothing more than establish the overall value of the debt by declaring the amount of the principal and the applicable interest rate (see e.g. NYCTL 1998-2 Trust v Wagner, 61 AD3d at 729 [tax lien certificate directed that the holder of the lien was entitled to principal plus interest at 18%, compounded, "until the Tax Lien Principal Balance is paid in full"]). As a result, the issue in these other cases was which interest rate should be applied to calculate damages for nonpayment of principal—they did not involve the computation of damages for unpaid interest payments.

The "interest on interest" question posed by the Second Circuit is raised in this case because the "until the principal hereof is paid" phrase is an integral component of the requirement that Argentina pay interest twice a year. For the reasons articulated above, our answer to the question of whether the bondholders are entitled to statutory interest on the delinquent interest-only payments is also "yes."

There is no question that the judgment against Argentina will be extraordinarily large, primarily due to the passage of time and the application of the contract's floating interest rate. But this is no reason to depart from the legal principle that contracts must be enforced according to the language adopted by the parties, particularly here where Argentina drafted the bond documents.

Accordingly, the certified questions should be answered in the affirmative.

Chief Judge LIPPMAN and Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur.

Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.27 of the Rules of the Court of Appeals (22 NYCRR 500.27), and after hearing

argument by counsel for the parties and consideration of the briefs and the record submitted, certified questions answered in the affirmative.