Devine, J. Appeal from a judgment of the Supreme Court (J. Sise, J.), entered March 3, 2016 in Montgomery County, upon decisions of the court in favor of plaintiff. This action, commenced in May 2010, stems from an oral agreement between plaintiff and defendant. Plaintiff claimed that in 2003, he loaned defendant $170,000 to be repaid in 131 installments at an interest rate of 3.95%. In his answer, defendant denied that he borrowed any money from plaintiff. After a nonjury trial in March 2015, Supreme Court determined that defendant defaulted on the loan and entered a judgment in favor of plaintiff in the amount of $131,484.93, together with prejudgment interest. Defendant now appeals. Generally, upon an appeal from a determination made after a nonjury trial, in which our authority is as broad as the trial court, we “independently consider the probative weight of the evidence and the inferences to be drawn therefrom, but we defer to the factual findings made by the trial court, particularly where they are based upon credibility assessments” (Kelly v Bensen, 151 AD3d 1312, 1313 [2017] [internal quotation marks and citation omitted]; see Mills v Chauvin, 103 AD3d 1041, 1050 [2013]). Further, where, as here, there is a dispute regarding the existence of an oral agreement, “the court looks not to the parties’ after-the-fact professed subjective intent, but rather at their objective intent as manifested by their expressed words and conduct at the time of the agreement” (Danka Off. Imaging Co. v General Bus. Supply, 303 AD2d 883, 884 [2003] [internal quotation marks and citations omitted]). At trial, plaintiff testified that he and defendant were friends and that they were both involved in bookmaking. According to plaintiff, in 2003, defendant asked him for a loan to pay for the construction of his new home. Defendant calculated a number of proposed loan amounts, terms and interest rates on a piece of paper and the two agreed that defendant would borrow $170,000 at 3.95% interest, to be repaid in 131 installments in the amount of $1,600 every four weeks. Plaintiff testified that he initially loaned defendant $40,000 in 2003 and provided the remainder of the loan proceeds with two or three installments in 2004. Defendant made the installment payments in cash in envelopes. Plaintiff testified that he received 35 envelopes from defendant and on each envelope defendant wrote the principal amount due before and after each payment. Both the paper with the various calculations and the envelopes were admitted into evidence. Plaintiff testified that he eventually agreed to allow defendant to make annual installment payments and that defendant made one $5,000 payment in 2008 and another in 2009. For his part, defendant testified that in January 2005, plaintiff asked him to hold $210,000 of his money and to pay him $400 spending money each week, payable every four weeks. Defendant acknowledged that it was his handwriting on the paper exhibits but explained that, for reasons unknown, he did the calculations at plaintiff’s request. Defendant explained that he and plaintiff had a falling out after plaintiff allegedly interfered in defendant’s effort to purchase a liquor store. Consequently, defendant testified that, in September 2007, he returned all of plaintiff’s remaining cash, together with envelopes that were empty, but inexplicably marked with payment and balance amounts. We are mindful that plaintiff testified that the source of the loan proceeds was cash obtained through his illegal bookmaking activities. Indeed, both plaintiff and defendant were convicted of promoting gambling and required to pay fines in the amount of $100,000 and $50,000, respectively. Although plaintiff asserted his Fifth Amendment right against self-incrimination when asked whether he ever reported the cash as income, we are not persuaded by defendant’s contention that Supreme Court erred in failing to draw a negative inference because the source and/or taxable status of the funds was not probative of the issue presented. According due deference to Supreme Court’s credibility assessments, we find ample evidence to support the determination that plaintiff and defendant agreed to the loan that defendant breached by failing to make all of the payments due (see Morrone v Costagliola, 151 AD3d 1055, 1056 [2017]; Jump v Jump, 268 AD2d 709, 711 [2000]). Contrary to defendant’s argument, because there was nothing prohibiting defendant from repaying the loan within one year, the statute of frauds did not bar enforcement of the oral agreement (see Moon v Moon, 6 AD3d 796, 798 [2004]). We also find that defendant waived his right to challenge the loan on the basis of illegality because it was not raised as an affirmative defense (see CPLR 3018 [b]; see generally Chase Home Fin., LLC v Howland, 149 AD3d 1405, 1405-1406 [2017]). Were we to consider the issue, we would find that, because neither the agreement nor the performance of the agreement was illegal, the judgment was enforceable (see Balbuena v IDR Realty LLC, 6 NY3d 338, 361 [2006]; Jara v Strong Steel Door, Inc., 58 AD3d 600, 602 [2009]). Finally, where, as here, “the parties failed to include a provision in the contract addressing the interest rate that governs after principal is due or in the event of a breach, New York’s statutory rate will be applied as the default rate” (NML Capital v Republic of Argentina, 17 NY3d 250, 258 [2011]). As such, we conclude that Supreme Court properly granted the prejudgment interest rate at 9% from June 1, 2010, following plaintiffs demand for payment in full, through the entry of a judgment (see CPLR 5001 [a], [b]; 5004; NML Capital v Republic of Argentina, 17 NY3d at 258; Ross v Ross Metals Corp., 111 AD3d 695, 697 [2013]). McCarthy, J.P., and Pritzker, J., concur.