# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 18
Moshe Marcel Ajdler,
      Appellant,
     v.
Province of Mendoza, a Province
of the Republic of Argentina,
      Respondent.

Michael H. McGinley, for appellant.
Carmine D. Boccuzzi, Jr., for respondent.

FEINMAN, J.:

The limited issue before us concerns the enforceability of a bond issuer's obligation

to pay interest on an outstanding principal debt when a claim to recover that principal is

time-barred.

- 1 -

The United States Court of Appeals for the Second Circuit has asked us to decide, pursuant to Rule 500.27 of this Court, "[i]f a bond issuer remains obligated to make biannual interest payments until the principal is paid, including after the date of maturity (see NML Capital v Republic of Argentina, 17 NY3d 250 [2011]), do enforceable claims for such biannual interest continue to accrue after a claim for principal of the bonds is time-barred?" We answer this question in the negative.[1] Pursuant to New York common law and the terms of the indenture, in the absence of a timely action to recover principal, a bondholder cannot enforce the conditional obligation to make post-maturity interest payments.

## I.

## A.

In September 1997, defendant Province of Mendoza issued bonds valued at $250 million (the "Bonds"). Plaintiff Moshe Marcel Ajdler is the beneficial owner of $7,050,000 of the principal amount. The Bonds, which were issued pursuant to an indenture and were governed by attendant terms and conditions (collectively, the "Indenture"), were due to mature ten years later. The plain language of the Indenture, which is to be interpreted pursuant to New York law, provides that defendant was required to pay interest in biannual installments accruing on the principal sum at a 10% annual rate. Relatedly, the language

---

[1] The Second Circuit also asked whether, "[i]f the answer to the first question is 'yes,' can interest claims arise ad infinitum as long as the principal remains unpaid, or are there limiting principles that apply?" Because we answer the first question in the negative, we do not reach the second question.

of the Bonds states: "Interest shall accrue from and including the most recent date to which interest has been paid or duly provided for or, if no interest has been paid or duly provided for, from [the date the Bonds were issued] until payment of said principal sum has been made or duly provided for."

Under the terms of the Indenture, defendant was required to repay the principal in a lump sum on the maturity date. Moreover, the Indenture states that "[e]ach Bond will cease to bear interest from [that date] unless . . . payment of principal is improperly withheld or refused." Upon defendant's failure to pay principal or interest, the Indenture provides that "[n]otwithstanding any other provision in [the] Indenture," plaintiff and the other bondholders have an "absolute and unconditional" right to "receive payment of the principal of and interest on . . . the Bond on the stated maturity expressed in such Bond and to institute suit for the enforcement of any such payment . . . ." The terms and conditions of the Bonds further circumscribe that right, stating that "[a]ll claims against [defendant] for payment of principal of or interest . . . on or in respect of the [b]onds shall be prescribed unless made within four years from the date on which such payment first became due."

In June 2004, defendant offered, in exchange for the Bonds, to issue new restructured bonds with a delayed maturity date and a lower interest percentage in anticipation of its inability to meet its obligations as a result of the evolving Argentinian sovereign debt crisis. Plaintiff rejected defendant's exchange offer. Subsequently, plaintiff did not receive any scheduled biannual interest payments or payment of his share of principal on the maturity date.

B.

Nine and a half years after the maturity date, in March 2017, plaintiff commenced this action against defendant in the United States District Court for the Southern District of New York seeking to collect his share of principal as well as all accrued and unpaid biannual interest payments to which he was entitled under the Indenture. Defendant moved to dismiss the complaint, as relevant here, on the ground that plaintiff's claims were time-barred under the four-year prescription period provided in the Indenture. In opposition, plaintiff relied primarily on NML Capital v Republic of Argentina (17 NY3d 250 [2011]), in which we held based on a nearly identical indenture provision requiring the bond issuer to make biannual interest payments "until the principal was repaid" that, where principal was not repaid on the maturity date, the bond issuer was obligated to make interest payments until the principal was actually repaid. Plaintiff argued that because we did not expressly cabin our holding in NML Capital to timely claims for principal, defendant was obligated to make biannual interest payments until plaintiff's share of principal was actually repaid or the Indenture merged into a judgment, regardless of whether the bondholder sued before a claim to recover the principal was untimely. Thus, at a minimum, plaintiff maintained that he was entitled to recover unpaid post-maturity interest payments due within what he then argued was the applicable six-year limitations period prior to commencing this action.[2]

---

[2] Plaintiff now concedes that the four-year contractual prescription period applies, instead of the otherwise applicable six-year statute of limitations period (see CPLR 213 [2] [applying a six-year statute of limitations to breach of contract claims]).

The district court granted defendant's motion to dismiss. The court held that the four-year prescription period set forth in the Indenture applied, and measuring that period from the maturity date, all claims for principal and any accrued interest were time-barred (Ajdler v Province of Mendoza, No. 17-CV-1530 (VM), 2017 WL 3635122 [SD NY Aug 2, 2017]). Moreover, the court agreed with defendant that NML Capital was not intended to extend to situations in which a claim to recover the principal was untimely (id. at **8-9).

The Second Circuit agreed that the four-year prescription period applied and that plaintiff's claim for principal was untimely (Ajdler v Province of Mendoza, 890 F3d 95 [2d Cir 2018]). Like the trial court, the Second Circuit did not find NML Capital to be unambiguously dispositive of the viability of plaintiff's claims to recover interest because "it was made in the context of a *timely* claim for principal" (id. at 101). However, the court considered New York law inconclusive as to the timeliness of plaintiff's claims for post-maturity interest payments that came due in the four years before plaintiff commenced this action (id.). On the one hand, the court highlighted our decision in Chapin v Posner (299 NY 31 [1949]) and its progeny stemming from the time-limited mortgage moratorium legislation enacted in the wake of the Great Depression (see e.g. Civ Prac Act §§ 1077-a, 1077-b). The court noted that those cases support defendant's argument, as they indicate that "unpaid principal on which the limitations period has run cannot give rise to new interest claims" (Ajdler, 890 F3d at 102). The court also discussed a number of cases from New York lower courts "suggesting not only that claims for post-maturity interest cannot

*accrue* once the principal is time-barred, but that claims for interest on unpaid principal *expire* when the limitations period has run for recovery of the principal" (id.). The court noted that defendant's argument "might well persuade but for" plaintiff's citation to a section of the encyclopedia New York Jurisprudence sanctioning a separate action to recover post-maturity interest due on unpaid principal even where the principal is barred by the statute of limitations (id. at 102-103). That source, however, cited as its only authority an Appellate Division decision issued in partial reliance on our mortgage moratorium jurisprudence (see 72 NY Jur 2d Interest and Usury § 54, citing Union Trust Co. of Rochester v Kaplan, 249 App Div 280 [4th Dept 1936]). The court also cited a recent Appellate Division decision that did not explicitly consider the issue here, but which impliedly indicated that the obligation to make post-maturity interest payments after a claim on the principal was time-barred was enforceable (see Amrusi v Nwaukoni, 155 AD3d 814 [2d Dept 2017]). Thus, the Second Circuit certified the two aforementioned questions for our consideration (id. at 105-106), and we accepted them (see 31 NY3d 1105 [2018]).

II.

As a general rule, we have viewed interest, which is "payable for the loan or retention of money by express contract, or as damages for non-payment of money due" (Ledyard v Bull, 119 NY 62, 74 [1890]), as incident to the principal as opposed to a separately enforceable debt (see Williamsburgh Sav. Bank v Town of Solon, 136 NY 465, 481 [1893] ["Interest, as a rule, follows the principal . . . ."]; Havender v Brodbeck, 83

Misc 9, 11 [App Term 1st Dept 1913] ["Ordinarily interest follows the principal as the shadow does the substance"] [internal quotation marks and citation omitted]).  Thus, absent contractual language to the contrary, "the receipt of the principal bars a subsequent claim for the interest, for the reason that in such cases interest, being a mere incident, cannot exist without the debt, and, the debt being extinguished, the interest must necessarily be extinguished" (Crane v Craig, 230 NY 452, 461 [1921]; see also Kaplan, 249 App Div at 283 ["(W)here several sums or installments are due upon a single contract, . . . . (and) such claims are single, entire, and indivisible . . . . they must all be included within one action; otherwise a recovery upon one will constitute a bar to the others"], citing Kennedy v City of New York, 196 NY 19, 22 [1909]).[3]

III.

We turn next to the question posed by the Second Circuit: whether the running of the statute of limitations on a bondholder's claim for principal impacts the recoverability

---

[3] We note that it has long been settled that in limited circumstances involving the obligation to pay interest prior to the maturity date by way of contractually-scheduled installment payments, New York courts apply a separate accrual rule: "[W]hen a contract provides for the payment of money in installments, such as interest installments, the Statute of Limitations runs on each installment from the date it becomes due" (Vigilant Ins. Co. of Am. v Housing Auth. of City of El Paso, Tex., 87 NY2d 36, 45 [1995]; Phoenix Acquisition Corp. v Campcore, Inc., 81 NY2d 138, 141-142 [1993]; U.S. Bank Natl. Assn. v Joseph, 159 AD3d 968, 970 [2d Dept 2018]).  But the question we must answer here is not when (or whether) claims for unpaid interest payments "accrue" but whether a bondholder whose claim for recovery of outstanding principal is time-barred nonetheless possesses a viable claim to recover unpaid post-maturity interest payments.

of interest payments that may come due subsequent to that date under an indenture providing for the obligation to pay interest until the principal is paid.

Plaintiff maintains that the logical extension of our holding in NML Capital allows him to recover post-maturity interest payments that were due after a claim for the underlying principal is time-barred, for the four years preceding the commencement of this action. In NML Capital, the recovery of post-maturity interest payments was an incident of a timely claim for recovery of principal. Thus, the Court had no occasion to opine on the viability of claims for unpaid post-maturity interest payments after the limitations period on claims for unpaid principal have expired. Now, squarely presented with this question, we clarify that under New York law, where an indenture provides that interest is due until the principal is paid, once an action to recover outstanding principal is time-barred, there can be no freestanding claim to enforce the obligation to make post-maturity interest payments.

In NML Capital, this Court was asked to consider "whether Argentina's obligation to make biannual interest-only payments to bondholders continued after maturity or acceleration of the indebtedness and, if so, whether the bondholders were entitled to CPLR 5001 prejudgment interest on payments that were not made as a consequence of the nation's default"—i.e., interest on interest (17 NY3d at 254, 267). The indenture at issue in NML Capital contained language substantively identical to the central language in this Indenture, providing that Argentina was obligated to make biannual interest payments to the bondholders "until the principal hereof is paid or made available for payment" (17

NY3d at 254). We held that "[b]y its terms, the contract contemplates that the bondholders are entitled to biannual interest payments until the principal is actually repaid in full—and not merely until the bond maturity date as Argentina suggests" (17 NY3d at 260, 262).

Plaintiff's reliance on NML Capital is misplaced. The statute of limitations applicable to the plaintiffs' claim for principal in that case had not yet run, and the novel issue we addressed concerned whether the plaintiffs were entitled to prejudgment interest on overdue post-maturity or post-acceleration interest payments. To answer that question, we relied on general principles of New York law involving prejudgment interest rates establishing that when a contract specifies the interest rate until the principal is paid, in the event of breach of the obligation to pay principal, the contract interest rate governs rather than the statutory prejudgment interest rate provided in CPLR 5001 (a) (NML Capital, 17 NY3d at 258-259, 266). We reasoned by analogy that bondholders may recover prejudgment interest at the contract rate accruing on unpaid post-maturity interest payments (id. at 261, 266). For timely actions, the parties' negotiated rate governs "until payment of the principal, or until the contract is merged in the judgment" (id. at 261). Thus, contrary to plaintiff's argument, NML Capital does not stand for the proposition that—in the absence of a timely claim for principal—a bondholder has a legally cognizable claim for unpaid post-maturity interest payments until the principal is actually repaid based on language in the Indenture that the issuer is obligated to pay interest "until the principal hereof is paid or made available for payment."

Rather, the date when principal is due—ordinarily the maturity date—serves as a legally significant benchmark because it marks the event upon which the obligation to pay post-maturity interest is conditioned.  The obligation to pay post-maturity interest is not a distinct promise of performance, but arises on the maturity date only if the bond issuer breaches the parties' agreement by failing to timely repay the principal.  This is consistent with our general view that, aside from the limited mortgage moratorium exception triggered by explicit legislation,[4] the recoverability of post-maturity interest payments is tethered to a claim for principal rather than "a debt capable of a distinct claim" (see Cutter v City of New York, 92 NY 166, 170 [1883]; Bailey v Buchanan, 115 NY 297, 302 [1889] ["(T)he amount of the bond with the interest thereon" constitutes "but one debt"]; cf.

---

[4] Indeed, New York courts have permitted plaintiffs to bring distinct actions to recover a limited set of unpaid interest payments once a claim on the principal is time-barred only after the Legislature passed the mortgage moratorium statutes "enacted for the protection of owners and obligors on bonds and mortgages" and intended "to prevent foreclosures and the exaction of higher rates of interest during the emergency period" (Metropolitan Sav. Bank v Tuttle, 290 NY 497, 503-504 [1943]; see e.g. Chapin v Posner, 299 NY 31, 42 [1949]; Ernst v Schaack, 271 App Div 1012 [2d Dept], affd, 297 NY 566 [1947]; In re Bond & Mortg. Guarantee Co., 272 App Div 944, 945-946 [2d Dept], affd, 297 NY 765 [1948]; see also Civ Prac Act §§ 1077-a, 1077-b).  The jurisprudence emanating from this legislation was premised "upon the theory, evolved in response to the special circumstances created by the mortgage moratorium, that successive defaults in payment of interest installments gave rise to separate new causes of action" (Gorgas v Perito, 299 NY 265, 270 [1949]).  Plaintiff makes no argument that these cases apply outside the narrow context of the mortgage moratorium legislation in which they were decided, and instead argues that they are distinguishable.  In any event, the mortgage moratorium cases enabled a plaintiff to assert claims for only a limited subset of unpaid interest payments that accrued no later than the expiration of the limitations period on the claim for principal—claims that, in this case, would be time-barred.

Amrusi, 155 AD3d at 816[5]).  Once a creditor can no longer establish a right to repayment

of principal, there is no basis or foundation upon which to allege a right to payment of post-

maturity interest.  To that end, once a claim on the principal is time-barred, a suit to recover

post-maturity interest payments is not viable (see Cutter, 92 NY at 170 ["(I)nterest (not

otherwise provided for independently by contract) . . . is given as damages for non-payment

or detention of the money awarded . . . . It could only be recovered with the principal by

action . . . ."]; Hudson Valley Ry. Co. v O'Connor, 95 App Div 6, 10 [3d Dept 1904]; see

also 3 Williston on Contracts § 7:33 [4th ed]) ["(W)hen the principal debt is barred by the

Statute of Limitations, the claim for interest, whether contracted for or not, is also

barred"]).

IV.

The rule we reiterate today effectuates the agreement negotiated by the parties and

reinforces our longstanding view of interest as generally dependent on principal.

Moreover, it promotes the purposes underlying the statute of limitations.[6]  For those

---

[5] Although the court in Amrusi impliedly permitted an action to recover on missed interest payments accruing after a claim on principal was time-barred, we decline to read the court's decision as endorsing that view because the court did not consider that precise issue (155 AD3d at 817).  To the extent that it has previously been so read, it should no longer be followed.

[6] Our statute of limitations doctrine "serve[s] the . . . objectives of finality, certainty and predictability" (ACE Sec. Corp. v DB Structured Prod., Inc., 25 NY3d 581, 593 [2015]). Moreover, "the Statute of Limitations is generally viewed as a personal defense to afford protection to defendants against defending stale claims, [and] also expresses a societal interest or public policy of giving repose to human affairs" (John J. Kassner & Co. v City of New York, 46 NY2d 544, 550 [1979]).  As we recently recognized, in the context of the statute of limitations, our preference for certainty militates in "favor [of] . . . a bright line

reasons, we conclude that once a claim on the principal is time-barred, a claim to recover unpaid post-maturity interest payments is not legally cognizable.

Accordingly, the first certified question should be answered in the negative and the second certified question not answered as unnecessary.

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.27 of this Court's Rules of Practice, and after hearing argument by counsel for the parties and consideration of the briefs and record submitted, first certified question answered in the negative and second certified question not answered as unnecessary.  Opinion by Judge Feinman.  Chief Judge DiFiore and Judges Rivera, Stein, Fahey, Garcia and Wilson concur.

Decided March 21, 2019

---

approach" (Deutsche Bank Natl. Tr. Co. v Flagstar Capital Markets Corp., 32 NY3d 139, 145-146 [2018]).