OPINION OF THE COURT
Barry A. Cozier, J.
In this insurance coverage dispute, defendant insurance carrier moves, pursuant to CPLR 3212, to dismiss the complaint on the ground that exclusions in the insurance policy bar plaintiff’s recovery. For the reasons hereinafter set forth, the motion is granted.
Factual Allegations
Plaintiff commenced this breach of contract action against its insurance company on or about December 16, 1998, after defendant denied coverage for plaintiff’s loss. At all relevant times, plaintiff was an importer of children’s wearing apparel. Plaintiff’s goods were manufactured in the Far East, and were shipped to port in New Jersey. Plaintiff then arranged for the merchandise to be delivered by truck to either a customer or certain warehouses. One of these warehouses was the Yankee Clipper Warehouse (Yankee Clipper), in Secaucus, New Jersey. Plaintiff had an oral agreement with Yankee Clipper for the storage and handling of plaintiff’s goods, and had used the warehouse without incident since 1996. Plaintiff’s vice-president, Joseph Soffer (Soffer), testified at his deposition that once the goods were at the warehouse, plaintiff would generate the shipping documents and send them to Yankee Clipper. The documents indicated to Yankee Clipper which carrier to use for transporting the goods to the customer, whereupon Yankee Clipper would call the carrier. Yankee Clipper would then instruct the carrier to pick up the goods and sign the bill of lading, and to transport the goods to the customer. The carrier billed plaintiff directly. Yankee Clipper participated in periodic inventories of plaintiff’s goods, and occasionally changed a label on a garment, added a price ticket or repacked a box. Upon receipt of shipping documents generated by plaintiff, Yankee Clipper would move the goods, which were in boxes or containers, from their locations in the warehouse out to the loading dock. Soffer agreed that, at that juncture, Yankee Clipper’s responsibilities ended.
Soffer’s affidavit in opposition to this motion states that plaintiff treated Yankee Clipper’s facility as one for temporary *93 storage and “transhippment [sic] of its goods, i.e, as a carrier for hire.”
The loss of plaintiffs goods occurred at Yankee Clipper on or about February 7, 1998. Yankee Clipper sold all of plaintiff’s merchandise stored at the warehouse to a salvage company, in order to cover plaintiff’s arrears of either $60,000 or $110,000.[1] Plaintiff claims that the goods had a retail value of approximately $3.2 million. According to Soffer, Yankee Clipper’s actions were taken without notice or reason, and without justification. He asserts that Yankee Clipper’s actions amounted to a theft, and were absolutely unauthorized by plaintiff.[2]
Defendant’s special multiflex insurance policy, number 14 UUNBE8009, was in effect at the time of the loss. The policy had a limit of $6,555,000. The policy recited Yankee Clipper’s address as a covered location, and it is undisputed that the policy covered that warehouse. The policy excluded, inter alia, any loss resulting from “[d]ishonest or criminal acts” by plaintiff or any of its “partners, employees, directors, trustees, authorized representatives or anyone other than a carrier for hire to whom [plaintiff] entrust [s] the property for any purpose.” (Para B [2] [h].) It also excluded any loss due to “[v]oluntary parting with property whether or not induced to do so by any fraudulent scheme, trick, device or false pretense.” (Para B [2] [i].) Nor would a loss be covered if it fell within the limitations under paragraph C, which includes property that is “transferred to any person or any place on the basis of unauthorized instructions.” (Para C [1] [d].)
Discussion
Plaintiff concedes, for purposes of this motion, that the loss was caused by the “dishonest acts” of the owners of Yankee Clipper, satisfying the first part of the first exclusion! Thus, if plaintiff entrusted its property to Yankee Clipper, and Yankee Clipper was not a “carrier for hire,” the first exclusion will apply.
The word “entrust” is not a defined term in the insurance policy. It is well settled that “[w]here the provisions of the *94 policy ‘are clear and unambiguous, they must be given their plain and ordinary meaning, and courts should refrain from rewriting the agreement.’ ” (United States Fid. & Guar. Co. v Annunziata, 67 NY2d 229, 232 [1986] [citations omitted].) Ambiguities, if any, should be resolved in favor of the insured and against the carrier. (Id.) “To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case.” (Continental Cas. Co. v Rapid-American Corp., 80 NY2d 640, 652 [1993] [citations omitted]; see also, Mazzuoccolo v Cinelli, 245 AD2d 245, 247 [1st Dept 1997].)
The term “entrust” must be “given its ordinary meaning, such as the average policyholder of ordinary intelligence, as well as the insurer, would attach to it,” and cannot be “deemed to have been used as [a] word[] of art with legalistic implications.” (Abrams v Great Am. Ins. Co., 269 NY 90, 92 [1935].) In using the word “entrust,” the parties in this case “must be deemed to have entertained the idea of a surrender or delivery or transfer of possession with confidence that the property would be used for the purpose intended by the owner and as stated by the recipient.” (Id.) The “entrust” exclusion in an insurance policy has been held to operate where the party turning over the property has had prior business dealings with the recipient, even though she turned out to be a thief. (See, id.) Entrustment was also found where the insured entrusted an emerald to a known trader in gems, who then delivered the stone on memorandum to the customer, who absconded. (See, David R. Balogh, Inc. v Pennsylvania Millers Mut. Fire Ins. Co., 307 F2d 894 [5th Cir 1962].)
The test as to whether there is an entrustment is the state of mind of the person turning over the property, and not the recipient. (Balogh, supra, at 897; Abrams, supra, at 92.) Barring fraud by the recipient, the donor’s delivery will likely constitute entrustment. (See, Camera Mart v Lumbermens Mut. Cas. Co., 58 Misc 2d 448, 450 [Civ Ct, NY County 1968] [rejecting defendant’s claim of entrustment when the recipient’s status was solely self-generated by “unmitigated deceit from the outset” as to both his intent and identity]; see also, Freedman v Queen Ins. Co., 56 Cal 2d 454, 458, 364 P2d 245, 247 [1961] [“(T)here can be no valid ‘delivery’ or ‘entrustment’ of property to another where the possession of the property is acquired by means of some fraudulent device”].)
In the present case, the evidence submitted establishes that plaintiff surrendered, delivered or transferred possession of its *95 goods with confidence that the property would be used for the purpose intended by plaintiff, i.e., temporary storage. This is manifest by plaintiff’s and Yankee Clipper’s contractual arrangements and uneventful course of dealing since 1996. Yankee Clipper’s subsequent improper sale of plaintiff’s merchandise is not relevant to whether plaintiff entrusted its goods to Yankee Clipper.
The controlling factor is plaintiff’s state of mind at the time it turned the goods over to Yankee Clipper. Plaintiff incorrectly relies on a case in which there was a question of fact as to whether the property had been entrusted to the intended recipient’s employee, who would be beyond the scope of the entrustment exclusion, rather than to the employer. (Facet Indus. v Wright, 95 AD2d 262 [1st Dept 1983], revd 62 NY2d 769 [1984]; cf., Glick v Excess Ins. Co., 14 NY2d 635 [1964] [affirming judgment for insured where jewels had been delivered on memorandum to third person who operated jewelry store, and were stolen by third party’s employee].) Plaintiff does not argue facts analogous to those in Facet (supra).
Plaintiff’s contention that the term “entrust” is limited to receipt by one who has the power to dispose of the goods, like a consignee, or a merchant who deals in goods of that type under Uniform Commercial Code § 2-403, is without merit. There is no such limitation in the insurance policy, and none of the cases relied upon by plaintiff suggest such a limitation in defining the word “entrust” in an insurance policy.
Plaintiff points to certain notes made by defendant’s claim adjuster, which, plaintiff argues, suggest that defendant had reason to believe that the term “entrust” was ambiguous. Plaintiff also argues that additional notes by the claim adjuster indicate that defendant’s agent read the first exclusion more narrowly than did defendant. However, since the meaning of the word “entrust” can be resolved from the four corners of the document, extrinsic evidence cannot be used. (See, Matter of Ideal Mut. Ins. Co. [Superintendent of Ins. of State of N. Y. — Harbour Assur. Co.], 231 AD2d 59, 63 [1st Dept 1997].) Thus, contrary to plaintiffs additional contention, no further discovery is warranted on the issue of the meaning of the word “entrust.” Further, neither party argues that the first exclusion is limited to dishonest acts by plaintiff or its employees, as the agent apparently believed. Thus, the evidence submitted establishes that plaintiff entrusted its goods with Yankee Clipper.
The term “carrier for hire,” which, if applicable to Yankee Clipper, would except its actions from the first exclusion, is *96 also not a defined term in the policy. Black’s Law Dictionary defines a “carrier” as “[a]n individual or organization (such as a railroad or an airline) that transports passengers or goods for a fee.” (Black’s Law Dictionary 205 [7th ed 1999].)[3] No evidence has been submitted suggesting that Yankee Clipper falls within this definition. Plaintiffs contention that Yankee Clipper is a “freight forwarder” is meritless. Although a freight forwarder is a category qualifying as a “carrier,” pursuant to 49 USC § 13102 (3), Yankee Clipper does not qualify as a freight forwarder as it is defined in 49 USC § 13102 (8). In order for Yankee Clipper to come within the definition of a freight forwarder, it must do each of the three activities described in 49 USC § 13102 (8) (A), (B) and (C). [4] (Chemsource, Inc. v Hub Group, 106 F3d 1358, 1361 [7th Cir 1997]; Transportation Revenue Mgt. v First NH Inv. Servs. Corp., 886 F Supp 884, 893 [D DC 1995].)
However, there is no evidence that Yankee Clipper “assume [d] responsibility for the transportation from the place of receipt to the place of destination,” as required under paragraph (B). All evidence is to the contrary, including Soffer’s testimony that Yankee Clipper’s responsibility ended once it moved goods to the loading dock. Consequently, Yankee Clipper is not a freight forwarder, nor any other carrier for hire. Thus, the first exclusion in the insurance policy bars plaintiffs recovery, since the loss was due to the dishonest acts of Yankee Clipper, to whom plaintiff entrusted its property.
In view of this determination, it is unnecessary for the court to reach defendant’s arguments that the two other exclusions apply.
Accordingly, it is ordered that defendant’s motion for summary judgment is granted and the complaint is dismissed with *97 costs and disbursements to defendant as taxed by the Clerk of the Court upon the submission of an appropriate bill of costs.

. Plaintiff claims the $60,000 amount, while Yankee Clipper asserted the $110,000 amount in a New Jersey civil action commenced by plaintiff against Yankee Clipper and others.

. In addition to the civil action commenced in New Jersey by plaintiff, Soffer also filed a criminal complaint against Yankee Clipper for the theft of plaintiff’s merchandise.

. Plaintiff argues that the definition of “carrier” in the fifth edition applies, i.e., “any person engaged in the transportation of * * * property by land, as a common, contract, or private carrier, or freight forwarder as those terms are used in the Interstate Commerce Act * * * 18 U.S.C.A. § 831” (Black’s Law Dictionary 194 [5th ed 1979]). That section, however, was repealed in 1979 (Pub L 96-129, tit II, § 216 [b], 93 US Stat 1015).

. 49 USC § 13102 (8) defines a “freight forwarder” as “[A] person holding itself out to the general public (other than as a pipeline, rail, motor, or water carrier) to provide transportation of property for compensation and in the ordinary course of its business — (A) assembles and consolidates, or provides for assembling and consolidating, shipments and performs or provides for break-bulk and distribution operations of the shipments; (B) assumes responsibility for the transportation from the place of receipt to the place of destination; and (C) uses for any part of the transportation a carrier subject to jurisdiction under this subtitle.”