16-2611-cv
*Warehouse Wines and Spirits v. Travelers Prop. Casualty Co. of Am.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of September, two thousand seventeen.

PRESENT:
> ROBERT D. SACK,
> PETER W. HALL,
> CHRISTOPHER F. DRONEY,
> *Circuit Judges.*

_____

WAREHOUSE WINES AND SPIRITS,

> *Plaintiff-Appellee,*

v.                                                                          16-2611-cv

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,

> *Defendant-Appellant.*

_____

For Appellant:                      CHRISTOPHER S. FINAZZO, Finazzo Cossolini O'Leary Meola & Hager, LLC, New York, NY.

For Appellee:                                     DENNIS T. D'ANTONIO (Joshua L. Mallin, *on the brief*), Weg and Myers, P.C., New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Forrest, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Travelers Property Casualty Company of America ("Travelers") appeals from a final judgment entered in favor of Plaintiff-Appellee Warehouse Wines and Spirits ("Warehouse Wines") following the entry of summary judgment as to liability and a bench trial as to damages. Travelers argues that the district court erred in granting summary judgment in favor of Warehouse Wines as to liability and improperly determined the amount of damages and prejudgment interest. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

**I.**

We review *de novo* a district court's grant of summary judgment, *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009), and will affirm "only where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, 'there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'" *Id.* (omission in original) (quoting Fed. R. Civ. P. 56(c)).

2

Travelers initially denied coverage for Warehouse Wines' insurance claim, asserting that the "dishonest acts" exclusion applied. In response, Warehouse Wines argued that the "carrier for hire" exception to the dishonest acts exclusion applied, and the district court agreed. Travelers contends that this was error. We disagree.

Under New York law, insurance policies are interpreted according to general rules of contract interpretation. *See, e.g., World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d 154, 183–84 (2d Cir. 2003), *abrogated on other grounds by Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006). Under those principles, insurance contracts should be interpreted "to give effect to the intent of the parties as expressed in the clear language of the contract." *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000). The "words and phrases [in a contract] should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir.2005) (internal quotation marks and ellipsis omitted).

In contending that the carrier for hire exception does not apply, Travelers asserts that Bestway Logistics Transportation was acting in its capacity as a warehouseman at the time of the loss. While the Policy does not define the term "carrier for hire," as understood in common usage, a "carrier" is "[a]n individual or organization (such as a shipowner, a railroad, or an airline) *that contracts to transport . . . goods for a fee*." *Carrier*, Black's Law Dictionary (10th ed. 2014)

3

(emphasis added). As this definition implies, it is the nature of the relationship between the transportation company and customer that determines whether an entity is a carrier for hire. Moreover, in determining whether an entity is a "carrier for hire," courts have looked to the primary goal or purpose of the entity entrusted with the goods or property. *See, e.g.*, *Nippon Fire & Marine Ins. Co., Ltd. v. Skyway Freight Sys., Inc.*, 45 F. Supp. 2d 288, 292 (S.D.N.Y. 1999) (concluding that Skyway was acting as a carrier because it "was engaged to ship [goods] by air, and any storage was temporary and incidental to that primary goal"); *Cougar Sport, Inc. v. Hartford Ins. Co.*, 737 N.Y.S.2d 770, 774–75 (Sup. Ct. 2000) (holding that warehouseman was not a carrier for hire because its "responsibility ended once it moved goods to the loading dock"), *aff'd* 733 N.Y.S.2d 151 (1st Dep't 2001). The underlying purpose of the contractual relationship between a carrier and the customer controls whether the exception applies.

Here, because Warehouse Wines contracted with Bestway Logistics Transportation to ship its products from the Hauppauge warehouse to its Manhattan retail store, the carrier for hire exception applies. Indeed, Bestway Logisitcs Transportation was registered with the Department of Transportation as a carrier for hire. The fact that Warehouse Wines' property was stolen from Bestway's warehouse does not alter the fact that it was in the custody of Bestway Logistics Transportation—a company contracted to transport goods for a fee. *Cf. Nippon Fire & Marine*, 45 F. Supp. 2d at 292 (concluding that Skyway was acting as

4

a carrier because it "was engaged to ship [goods] by air, and any storage was temporary and incidental to that primary goal").

Travelers makes much of the fact that by the time of the loss, James Ceseretti (the owner and president of the Bestway companies) had incorporated Bestway Warehouse & Transportation (strictly a warehousing business), and Warehouse Wines had entered an agreement with Bestway Warehouse & Transportation to store its products at the Hauppauge warehouse. Travelers contends that, because Warehouse Wines' product was in the custody of Bestway's warehousing operation (and not Bestway Logisitcs), the carrier for hire exception is inapplicable. In any event, because Travelers conceded that both companies were the alter egos of Ceseretti—and there is nothing to suggest that the warehousing agreement replaced the transportation agreement—Ceseretti remained a carrier for hire at the time of the loss. Indeed, Ceseretti expanded his operations under Bestway Logistics Transportation to provide warehouse services *before* incorporating Bestway Warehouse & Transportation, and both companies shared a common bank account. Ceseretti also made all decisions for the two companies and exercised complete dominion and control over them. In these circumstances, it is of no significance that Ceseretti also provided warehousing services to Warehouse Wines under a separate agreement, or that the goods were stored pursuant to that agreement at the time of the loss, because these facts do no undermine Bestway's relationship with Warehouse Wines as a carrier for hire.

5

"When reviewing a judgment following a bench trial in the district court, we review the court's findings of fact for clear error and its conclusions of law *de novo*." *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255 (2d Cir. 2014). "The insured bears the burden of proving the amount of damage, and the insurance company bears the burden of proving facts in mitigation of damage." *C-Suzanne Beauty Salon, Ltd. v. Gen. Ins. Co. of Am.*, 574 F.2d 106, 114 (2d Cir. 1978) (footnote omitted).[1] Once the fact of damages is established "[t]he plaintiff need only show a stable foundation for a reasonable estimate of the damage incurred as a result of the breach." *Tractebel Energy Mktg., Inc. v. AEP Power Marketing, Inc.*, 487 F.3d 89, 110 (2d Cir. 2007) (internal quotation marks and citation omitted). "Such an estimate necessarily requires some improvisation, and the party who has caused the loss may not insist on theoretical perfection." *Id.* at 111 (internal quotation marks omitted).

Travelers contends that the district court's finding that 4,095 cases of wine and other spirits were stolen from Warehouse Wines is unsupported because there is "[a]n unexplained discrepancy" in Warehouse Wines' inventory records, as the amount of cases of alcohol claimed to have been shipped from the Hauppauge warehouse to the Beehive warehouse following the loss differed from the amount of

---

[1] Travelers argues that New York law imposes a stricter standard here because the damages are "fixed" and "readily ascertainable," as compared to "prospective" and "inherently speculative," in which case a reasonable estimate is sufficient. Reply Br. at 16–17. However, Travelers offers no authority to support the proposition that New York courts have carried the burden of proof depending on the nature of damages at issue.

6

cases that Beehive actually received. Appellant's Br. at 54. Notwithstanding any purported discrepancy,[2] the district court's finding as to the number of cases stolen is adequately supported by (1) the allocution of Ceseretti—who confessed to stealing $1,115,479.54 worth of property from Warehouse Wines—(2) inventory records of the Hauppauge warehouse demonstrating inventory amounts that should have been in stock at the warehouse; (3) post-loss inventory records and bills of lading between Warehouse Wines and Beehive showing what inventory remained after the theft; (4) records of a partial inventory conducted by Warehouse Wines' president following discovery of the loss; and (5) the testimony of Warehouse Wines' president, who had personal knowledge of the items lost and personally counted the inventory. It cannot be said, therefore, that the district court erred, much less clearly erred, in finding that Warehouse Wines had reasonably demonstrated that 4,095 cases of alcohol had been stolen from the Hauppauge warehouse. *See Vasquez v. GMD Shipyard Corp.*, 582 F.3d 293, 297 (2d Cir. 2009) ("Under [the clear error] standard, factual findings by the district court will not be upset unless we are left with the definite and firm conviction that a mistake has been committed." (internal quotation marks and citation omitted)).

---

[2] To the extent there was a discrepancy between the amount of cases delivered to Beehive and Warehouse Wines' inventory records, the difference can be explained by a shipment of products that was sent to Warehouse Wines' retail store in Manhattan. Warehouse Wines' president testified that while the Beehive records correctly note that 23 trucks delivered products from Warehouse Wines to Beehive at the same time as that shipment, a 24th truck delivered product to the Manhattan retail store. It is this shipment that accounts for the "discrepancy" in Warehouse Wines' records and the amount of goods actually delivered to Beehive. There was thus no error in the district court's finding as to the number of cases stolen.

Similarly, Travelers challenges the district court's calculation of the value of Warehouse Wines' stolen inventory. Travelers argues that because Warehouse Wines only presented evidence of January 2012 liquor prices—when the Policy requires the value of property to be determined as of the time of the loss (December 2011)—Warehouse Wines has not met its burden of proving damages. So the argument goes: The district court's methodology of applying a "13% discount" to the January 2012 prices in Warehouse Wines' proof of loss to determine the appropriate value of stolen property is unsupported and speculative. The district court did not, however, manufacture the 13% discount rate out of thin air; rather, it considered the increase in prices from December 2011 to January 2012 for the 11 products for which the record contained such information and calculated the discount rate accordingly. The court then applied that rate to the remaining stolen products.

Faced with incomplete evidence of the December 2011 prices for the remaining stolen liquor products, and absent an alternative method for determining value, the district court reasonably calculated the total loss based on the record before it. It was not clear error for the district court to calculate the amount of damages suffered by Warehouse Wines based on a 13% discount figure, reasonably grounded in the record evidence. Travelers was entitled to rebut this calculation, but it simply failed to do so. Its belated attack on the district court's method for determining the value of loss is unpersuasive.

8

## III.

Section 5001 of New York Civil Practice Law and Rules "permits a party that prevailed in a breach of contract action to obtain prejudgment interest." *NML Capital v. Republic of Argentina*, 952 N.E.2d 482, 488 (N.Y. 2011); N.Y.C.P.L.R. § 5001(b). It specifically provides, in relevant part, that "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed . . . ." N.Y.C.P.L.R. § 5001. In an insurance-coverage dispute, the application of § 5001(b) requires that prejudgment interest be calculated from the date the insurer becomes obligated to indemnify the insured. *Cf. NML Capital*, 952 N.E.2d at 488.

It is undisputed that Warehouse Wines submitted a sworn proof of loss on April 24, 2012, as required by its Policy. Travelers nonetheless asserts that, because the Policy obligates the insured to submit to an examination under oath and permit examination of its books and records, and such examination was not complete until March 29, 2013, Warehouse Wines had not fully complied with the Policy at the time it submitted the proof of loss. Instead, Travelers argues that prejudgment interest may not be assessed any earlier than April 28, 2013, or 30 days after full compliance and thus the date upon which Travelers became obligated to indemnify Warehouse Wines. *See* Appellant's Br. at 58–59; App'x at 569.

Although the Policy allows Travelers to conduct an investigation into Warehouse Wines' claims, Warehouse Wines nonetheless submitted a sworn proof of loss on April 24, 2012, triggering Travelers' obligation to indemnify within 30 days of receipt. *See* App'x at 570. Travelers cannot circumvent § 5001(b) by denying

9

coverage while conducting a nearly year-long investigation into Warehouse Wines'

claims and then, once it is adjudicated liable, avoid paying prejudgment interest

from the "earliest ascertainable date the cause of action existed." N.Y.C.P.L.R. §

5001(b); *see Seward Park Hous. Corp v. Greater N.Y. Mut. Ins. Co.*, 43 A.D.3d 23, 34

(1st Dep't 2007) (concluding that plaintiff was entitled to prejudgment interest from

30 days of the submission of its sworn proof of loss). To adopt Travelers position

would be to undermine § 5001(b)'s purpose "to make an aggrieved party whole."

*Spodek v. Park Prop. Dev. Assocs.*, 759 N.E.2d 760, 762 (N.Y. 2001). Accordingly,

because Warehouse Wines submitted a sworn proof of loss on April 24, 2012, the

district court properly determined that prejudgment interest began to accumulate

on May 24, 2012.

We have considered all of Travelers' remaining arguments on appeal and

determine they are without merit. For the foregoing reasons, the judgment of the

district court is **AFFIRMED.**

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

10